UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

ST. PAUL FIRE & MARINE           )
INSURANCE COMPANY,               )
                                 )
            Plaintiff            )
                                 )
        v.                       )    Case No. 2:08 cv 176
                                 )
SCHILLI TRANSPORTATION           )
SERVICES, INC.; ATLANTIC INLAND)
CARRIERS, INC.; WVT OF TEXAS,    )
INC.,                            )
                                 )
            Defendants           )


OPINION AND ORDER

This matter is before the court on the following motions:

the Motion for Summary Judgment [DE 41] filed by the plaintiff,

St. Paul Fire & Marine Insurance Company, on December 15, 2010;

the Motion for Summary Judgment [DE 44] filed by the defendants,

Schilli Transportation Services, Inc. and WVT of Texas, Inc., on

December 15, 2010; the Motion for Summary Judgment [DE 45] filed

by the defendant, Schilli Transportation Service, Inc., on

December 15, 2010; the Motion to Strike Portions of the Affidavit

of Michael P. Lynch [DE 47] filed by the defendants on January

18, 2011; and the Motion for Leave to File Amended Affidavit [DE

53] filed by the plaintiff on February 1, 2011.  For the follow-

ing reasons, the Motion for Summary Judgment [DE 41] filed by the

plaintiff is GRANTED, the Motion for Summary Judgment [DE 44]

filed by Schilli Transportation Services Inc. and WVT of Texas, Inc. is DENIED, the Motion for Summary Judgment [DE 45] filed by Schilli Transportation Service Inc. is GRANTED, the Motion to Strike Portions of the Affidavit of Michael P. Lynch [DE 47] is DENIED, and the Motion for Leave to File Amended Affidavit [DE 53] is GRANTED.

## Background

St. Paul Fire & Marine Insurance Company issued an insurance policy for the term of June 1, 2000 through June 1, 2002, listing the defendants, Schilli Transportation Services, Inc., Atlantic Inland Carriers, Inc., and WVT of Texas, Inc., as the named insureds. Schilli, Atlantic, and WVT are separate corporations, each predominately owned by Tom Schilli, that engage in distinct businesses. WVT is an interstate motor carrier, Atlantic previously was an interstate motor carrier but closed in 2003, and Schilli is a freight broker. Schilli never has owned a tractor trailer and never has employed truck drivers. Schilli also provided risk management services for claims asserted against trucking companies, but all claims resolved on behalf of the trucking companies were paid for by the trucking companies themselves.

St. Paul issued Policy CK002100627 and insured Schilli, Atlantic, Wabash, and several other corporations. The policy defines "you, your, and yours" to mean "the insured named here

which is a CORPORATION", and goes on to list each corporation.

The policy provides in relevant part:

> EACH ACCIDENT/EVENT DEDUCTIBLE
>
> You agree to repay us up to this deductible
> amount for all damages caused by any one
> accident, as soon as we notify you of the
> judgment or settlement . . .
>
> REPAYMENT OF EXPENSES
>
> We will pay all expenses to settle a claim or
> suit.  You'll be responsible for the amount
> of expenses within the deductible . . .
>
> AUTO COVERAGE SUMMARY
>
> This Coverage Summary shows the Limits of
> Coverage that apply to your Commercial Auto
> Protection . . .
>
> $1,000,000.00 each accident.
>
> OTHER:
>
> $100,000 basket deductible per occurrence.

Under the General Rules section, the policy explained that
the first named insured, Schilli, was responsible for paying the
premium and would receive return premiums.  The first named in-
sured also could change or cancel the policy in whole or in part.
However, this section did not address who would be responsible
for the deductible in the event of a claim.

Throughout the duration of the insurance policy, several
accidents occurred involving the defendants.  On January 18,
2001, an automobile accident occurred between a car driven by

3

Heather Thompson and a semi tractor trailer driven by an Atlantic employee in Ontario, Canada. Thompson filed a complaint against Schilli, and St. Paul negotiated the release of Thompson's claim in the amount of $102,567.20. St. Paul sent Schilli an invoice for the $100,000 deductible, and Schilli refused to pay.

On October 25, 2001, a collision occurred between an automobile driven by Andrea Johnson and a semi-tractor trailer driven by an Atlantic employee. St. Paul communicated with Schilli regarding the status of the claim and eventually negotiated a $16,000 settlement of Johnson's claim. Johnson executed a release of all claims which named Schilli as one of the parties released.

On June 22, 2000, an accident occurred between a WVT employee attempting to load a semi-tractor trailer and an Owens Corning employee operating a forklift. The WVT employee, Albert Kozusko, filed a declaratory judgment action seeking a determination that St. Paul owed uninsured motorist coverage benefits under the policy issued to Schilli. St. Paul incurred defense costs of $13,161.70 to defend the claim.

On January 6, 2002, Allison Bergner was injured in a three vehicle collision involving a semi-tractor trailer driven by Donald H. Indorf, an employee of Schilli. Bergner asserted a claim, and St. Paul communicated with Schilli multiple times to

4

work out the terms for a settlement. St. Paul incurred $24,971.61 in defending Schilli from claims arising from this incident.

Another accident occurred on May 8, 2001, involving Lean Wurslin and a semi-tractor trailer. Wurslin filed suit against Schilli, and St. Paul negotiated a $135,000 settlement.

On February 25, 2002, Maria Fuentes and Otilio Aguilar were involved in a collision with a semi-tractor trailer. Fuentes and Aguilar filed a suit against Schilli, and St. Paul negotiated a settlement for $62,500 to both Fuentes and Aguilar.

St. Paul contacted Schilli and remained in contact with it throughout the negotiations for the above referenced accidents. St. Paul sent Schilli an invoice, seeking reimbursement for the $100,000 deductible for each accident. Schilli refused to pay on each account. Schilli argues that it is not liable for the deductible because the terms of the contract limit liability to one corporation for each resulting incident and the Indiana Statute of Frauds prohibits enforcing a contract to pay the debt of another that is not made in writing. Schilli believes that WVT and Atlantic should be held responsible for their own deductibles. Each of the parties has filed a motion for summary judgment.

In support of its motion for summary judgment, St. Paul submitted the affidavit of Michael P. Lynch. Lynch's affidavit explains that his knowledge is based upon his review of the business records that were kept in the ordinary course of business by an employee under a business duty to record the information. Several documents were attached to his affidavit as exhibits. However, Exhibit 2, the full and final release executed by Heather Thompson, Kale James William Thompson, and Kendra Loryn Thompson, inadvertently was left out, and because of this error Lynch's statements did not coordinate with the exhibits. St. Paul requests leave to amend Lynch's affidavit to attach Exhibit 2, but the defendants oppose St. Paul's motion and argue that Lynch's affidavit should be stricken because the statements contain inadmissible hearsay, Lynch lacks personal knowledge, and the statements violate the best evidence rule because the documents his knowledge was derived from were not attached.

## Discussion

As an initial matter, St. Paul moves to amend the affidavit of Michael P. Lynch to include a document it inadvertently failed to attach to Lynch's affidavit. The defendants oppose the motion arguing that the attachment of the additional document, the full and final release of all claims from the accident arising on January 18, 2001, executed by Heather Thompson, Kale James

William Thompson, and Kendra Loryn Thompson, would cause them prejudice because they have not had an opportunity to respond to the document.

It is within the trial court's discretion to allow parties to amend evidence in support of a motion for summary judgment. Maier v. Lucent Technologies, Inc., 120 F.3d 730, 735 (7th Cir. 1997)(explaining that the appellate court reviews the trial court's denial of a motion to supplement a response under an abuse of discretion standard) (citing Jonasson v. Lutheran Child & Family Servs., 115 F.3d 436, 440 (7th Cir. 1997); Buckner v. Sam's Club, Inc., 75 F.3d 290, 292 (7th Cir. 1996)). Generally, the non-moving party must be afforded an opportunity to respond to evidence submitted after its response has been filed. However, reply affidavits may be submitted without giving the non-moving party a chance to respond when the affidavit is limited to matters that may be raised in the reply, provided that the affidavit does not raise new issues. Buckner, 75 F.3d at 292; Baugh v. City of Milwaukee, 823 F.Supp. 1452, 1457 (E.D. Wis. 1993) ("[S]upplemental affidavits can be employed to clarify ambiguous or confusing deposition testimony.").

Although St. Paul did not submit Exhibit 2 as further evidence in support of its reply brief, St. Paul's motion to amend to include Exhibit 2 was filed after the defendants' response was

submitted, so the defendants did not have an opportunity to view and respond to the document. However, Lynch's affidavit made note of the contents of Exhibit 2, as did St. Paul's memorandum in support of its motion for summary judgment. Therefore, the disclosure of the full and final release as Exhibit 2 of Lynch's affidavit as an amended attachment does not come as a surprise to the defendants. The prior references to the evidence gave the defendants an opportunity to respond. Therefore, the motion to amend Lynch's affidavit is GRANTED.

The defendants, however, oppose Lynch's affidavit on the merits and have moved to strike portions of his affidavit on the ground that they contain hearsay and violate the best evidence rule. To support a claim that has been challenged on summary judgment, an affidavit may not be based upon "self-serving statements . . . without factual support in the record." Thanong-sinh v. Board of Education, 462 F.3d 762, 781 (7th Cir. 2006) (quoting Butts v. Aurora Health Care, Inc., 387 F.3d 921, 925 (7th Cir. 2004)). Rather, Federal Rule of Civil Procedure 56(e) requires that an affidavit must be "made on personal knowledge [and] set forth facts as would be admissible in evidence." Evidence contained in the affidavit must be excluded if it does not comply with the Federal Rules of Evidence. For example, hearsay is not admissible, Wigod v. Chicago Mercantile Exchange, 981 F.2d

1510, 1519 (7th Cir. 1992), unless it comes within a recognized exception to the hearsay rule. Oriental Health Spa v. City of Fort Wayne, 864 F.2d 486, 490-91 (7th Cir. 1988) (applying Rule 803(8)). In addition, a party resisting summary judgment may not "patch-up potentially damaging deposition testimony with a contradictory affidavit." Commercial Underwriters Insurance Company v. Aires Environmental Services, Ltd., 259 F.3d 792, 799 (7th Cir. 2001). See also Buckner, 75 F.3d at 292 ("[T]he law of this circuit does not permit a party to create an issue of fact by submitting an affidavit whose conclusions contradict deposition or sworn testimony."). "Rule 56 demands something more specific than the bald assertion of the general truth of a particular matter, rather it requires affidavits that cite specific concrete facts establishing the existence of the truth of the matter asserted." Hadley v. County of DuPage, 715 F.2d 1238, 1243 (7th Cir. 1983). See also, Drake v. Minnesota Mining and Manufacturing Company, 134 F.3d 878, 886 (7th Cir. 1998).

The defendants' motion is largely based on the plaintiff's inadvertent failure to attach Exhibit 2, so that the attached exhibits failed to coordinate with the statements provided in Lynch's affidavit. However, the referenced documents were attached to Lynch's affidavit, albeit not in the correct order. St. Paul corrected the error by filing its amended affidavit and

attaching Exhibit 2, and the documents now properly coordinate with the statements given in Lynch's affidavit. However, the defendants remain opposed to the affidavit, arguing that Lynch does not have personal knowledge of the statements because he garnered his knowledge from reviewing the attached documents.

An affiant must have personal knowledge of the facts he attests to in his affidavit. Rule 56(e). Personal knowledge refers to knowledge gained through first hand observation or experience, as distinguished from a belief based on a statement made by another. 3 Litigating Tort Cases §31:9; Visser v. Packer Engineering Associates, Inc., 924 F.2d 655, 659 (7th Cir. 1991) ("'personal knowledge' includes inferences - all knowledge is inferential - and therefore opinions . . . But the inferences and opinions must be grounded in observation or other first-hand personal experience. They must not be flights of fancy, specula-tions, hunches, intuitions, or rumors about matters remote from that experience."). A corporate officer may be deemed to have personal knowledge of the acts of the corporation and need not expressly state that the allegations contained in his complaint are based on his personal knowledge. See, e.g., Self-Realization Fellowship Church v. Ananda Church of Self-Realization, 206 F.3d 1322, 1330 (9th Cir. 2000), cert. denied, 531 U.S. 1126, 121 S.Ct. 881, 148 L.Ed.2d 790 (2001) (stating that the court could

presume personal knowledge from the affiant's position as a corporate officer); Catawba Indian Tribe of South Carolina v. State of South Carolina, 978 F.2d 1334 (4th Cir. 1992) (stating that corporate officers ordinarily have personal knowledge of the acts of their corporation); Barthelemy v. Air Lines Pilots Ass'n, 897 F.2d 999, 1018 (9th Cir. 1990) (inferring from affiant's position as CEO personal knowledge of various corporate activities). Rather, there is a general presumption that an employee or corporate representative has personal knowledge, sufficient to attest to matters relating to the business entity. ABN Amro Mortgage Group, Inc. v. Maximum Mortgage, Inc., 2006 WL 2598034, *5 (N.D. Ind. Sept. 8, 2006).

In ABN, a corporate representative verified that her testimony was based on her personal knowledge and familiarity with the corporation's business records. The court found that such derivative knowledge was a sufficient basis for personal knowledge and denied the motion to strike the affidavit. ABN, 2006 WL 2598034 at *5. See also Westchester Fire Ins. Co. v. American Wood Fibers, Inc., 2006 U.S. Dist. LEXIS 24225 at *12 (N.D. Ind. March 21, 2006) (presuming knowledge of events described in affidavit based on employment and position with company). The court explained that the affiant's conclusions were "based upon

her own observations and substantiated by specific facts and records." ABN, 2006 WL 2598034 at *5.

Lynch attested that he is a Senior Case Manager of Business Insurance at Travelers Indemnity Company, that his knowledge was based on reviewing the business records maintained by Travelers and its affiliates, and that employees were under a business duty to record the information accurately near the time of the recorded event. As a corporate representative, Lynch is presumed to have personal knowledge to attest to matters relating to Travelers. Whether his knowledge was garnered from reviewing business documents that Travelers had a business duty to record or from his personal observations is immaterial. See ABN, 2006 WL 2598034 at *5. Therefore, the defendants' objection to Lynch's affidavit on the grounds of lack of personal knowledge is not well grounded. Lynch's statements are made pursuant to his own observations and substantiated by the records, and he therefore has personal knowledge to attest to the facts contained in his affidavit.

The defendants also argue that the statements Lynch made in his affidavit are inadmissible hearsay. However, Lynch's affidavit specifically states that his statements are based on his review of "business records maintained by Travelers and its affiliates by employees under a business duty to record informa-

tion accurately at or near the time of the event recorded."
Federal Rule of Evidence 803(6) exempts from the definition of
hearsay statements contained in business documents made at or
near the time of an event, recorded by someone with personal
knowledge, kept in the regular course of business, and made by
someone under a business duty to record.

In ABN, the affiant similarly stated that her knowledge was
derived from her review of business documents kept by the company
in the ordinary course of business created at or near the time of
the events documented therein.  ABN, 2006 WL 2598034 at *5. The
court found that this statement was conclusive proof that her
statements were not hearsay and were excluded by the business
records exception.  The court went on to explain that the defen-
dant did not provide a meaningful explanation of which statements
were hearsay and how he so concluded.  Although the defendant
argued that the business records exception was inapplicable, he
did not explain how the specific statements were hearsay.  ABN,
2006 WL 2598034, at *5.

Lynch made a similar statement, providing that his knowledge
was based on business records kept in the ordinary course of
business, by an individual with a business duty to record, at or
near the time of the events in question.  This statement is proof
that his subsequent statements, based on Traveler's business

records, are admissible hearsay under the business records exception. Furthermore, the defendants provide nothing more than boilerplate allegations that the statements are hearsay. They have failed to show how each statement they contest falls under the hearsay rule.

The only specific allegation of hearsay the defendants raised was in response to paragraph 17 which provides: "On January 6, 2002, Allison Bergner, ('Bergner'), was driving her car in New York when it was involved in a three vehicle collision that included a semi tractor trailer driven by Donald H. Indorf, ('Indorf'). Indorf later gave a recorded statement to a claims adjuster for St. Paul in which he stated he was an employee of 'Schilli.' On January 31, 2003, St. Paul sent a letter to Robert M. Miele, acknowledging that he was serving as an attorney for Bergner to assert a claim for compensation against Schilli." Beyond alleging that this specific statement is hearsay, the defendant has provided no additional explanation to support its argument. Not only is this fatal to its claim, but Paragraph 17 also falls within an exception to hearsay. Because Indorf was an employee of Schilli, or one of the other defendants, his statement was a party admission through the doctrine of vicarious admissions, and therefore not hearsay. Federal Rule of Evidence 801(d)(2)(D) (stating that a statement by a party's agent or

servant concerning a matter within the scope of the agency or employment is not hearsay). The statement then was recorded by a claims adjuster who was under a business duty to record and again exempted under Rule 803(6). Both statements are, therefore, exceptions to hearsay. Absent further explanation, the defendants have failed to meet their burden to show that the statement was inadmissible hearsay.

The defendants also object to Lynch's affidavit, arguing that it does not comply with the best evidence rule. The best evidence rule states that an original writing must be produced to prove its contents, except as otherwise provided by the Rules or by Acts of Congress. Federal Rule of Evidence 1002. Duplicates are admissible to the same extent as the original, provided the authenticity is not challenged. Federal Rule of Evidence 1003. Lynch's affidavit contains duplicates of the documents his knowledge is derived from, as permitted by the rules. Although the defendants made specific references to statements that were not supported by the exhibits Lynch's affidavit referenced, this error was corrected when St. Paul submitted its amended affidavit that correctly labeled the exhibits to coordinate with the statements in the affidavit. Therefore, Lynch properly supplied the requisite documentation to support the statements he made in his affidavit and complied with the best evidence rule. For all of

these reasons, the defendants' motion to strike Lynch's affidavit is DENIED in its entirety.

The court now will address the parties' motions for summary judgment. Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is proper only if it is demonstrated that "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Stephens v. Erickson, 569 F.3d 779, 786 (7th Cir. 2009). The burden is upon the moving party to establish that no material facts are in genuine dispute, and any doubt as to the existence of a genuine issue must be resolved against the moving party. Adickes v. S.H. Kress & Company, 398 U.S. 144, 160, 90 S.Ct. 1598, 1610, 26 L.Ed.2d 142, 155 (1970); Stephens, 569 F.3d at 786. A fact is material if it is outcome determinative under applicable law. There must be evidence on which the jury could reasonably find for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 212 (1986); Stephens, 569 F.3d at 786; Wheeler v. Lawson, 539 F.3d 629, 634 (7th Cir. 2008).

Summary judgment is inappropriate for determination of claims in which issues of intent, good faith, and other subjec-tive feelings play dominant roles. Ashman v. Barrows, 438 F.3d

16

781, 784 (7th Cir. 2006).  Upon review, the court does not evalu-
ate the weight of the evidence, judge the credibility of wit-
nesses, or determine the ultimate truth of the matter; rather,
the court will determine whether there exists a genuine issue of
triable fact.  Wheeler, 539 F.3d at 634 (citing Anderson, 477
U.S. at 248, 106 S.Ct. at 2510).

In deciding a motion for summary judgment, the trial court
must determine whether the evidence presented by the party
opposed to the summary judgment is such that a reasonable jury
might find in favor of that party after a trial.

> The inquiry performed is the threshold in-
> quiry of determining whether there is the
> need for a trial--whether, in other words,
> there are any genuine factual issues that
> properly can be resolved only by a finder of
> fact because they may reasonably be resolved
> in favor of either party.
>
> [T]his standard mirrors the standard for a
> directed verdict under Federal Rule of Civil
> Procedure 50(a), which is that the trial
> judge must direct a verdict if, under the
> governing law, there can be but one reason-
> able conclusion as to the verdict.
>
> Anderson, 477 U.S. at 250, 106 S.Ct. at 2511

See also Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133,
149-151, 120 S.Ct. 2097, 2109, 147 L.Ed.2d 105, 120-122 (2000)
(setting out the standard for a directed verdict); Celotex Corp.,
477 U.S. at 322-23, 106 S.Ct. at 2553; Stephens, 569 F.3d at 786;
Argyropoulos v. City of Alton, 539 F.3d 724, 732 (7th Cir. 2008)

(stating that a genuine issue is one on which a reasonable fact
finder could find for the nonmoving party); Springer v. Durfling-
er, 518 F.3d 479, 483 (7th Cir. 2008)(stating that a genuine
issue exists and summary judgment is inappropriate if there is
sufficient evidence for a jury to return a verdict for the
nonmoving party).

The parties dispute who is liable for the deductible under
the insurance policy St. Paul issued to Schilli, WVT, and Atlan-
tic. "As a federal court sitting in diversity, we apply state
substantive law and federal procedural law."  Charter Oak Fire
Insurance v. Hedeen & Companies, 280 F.3d 730, 735 (7th Cir.
2002)(citing Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78, 58 S.Ct.
817, 82 L.Ed. 1188 (1938).  Under Indiana law, insurance policies
are interpreted according to the same rules of construction as
other contracts.  Barga v. Indiana Farmers Mutual Trust Insurance
Group, Inc., 687 N.E.2d 575, 578 (Ind. App. 1997); Colonial Penn
Ins. Co. v. Guzorek, 690 N.E.2d 664, 667 (Ind. 1997).  Words are
given their plain and ordinary meanings, and ambiguities are
resolved in favor of the insured.  Anderson v. State Farm Mutual
Auto Ins. Co., 471 N.E.2d 1170, 1172 (Ind. App. 1984).  Interpre-
tation of an insurance policy is a question of law to be decided
by the court.  National Fire and Casualty Company v. West, 107
F.3d 531, 534 (7th Cir. 1997).

In resolving a contract dispute, the court first must determine whether the policy contains clear terms or whether ambiguities exist.  See Travelers Indemnity Co. v. Summit Corp. Of America, 715 N.E.2d 926, 937 (Ind. App. 1999)(stating that the court first must determine whether the language in the contract is ambiguous).  A term is ambiguous if it is susceptible to more than one interpretation and a reasonable person may differ as to the meaning of the policy language.  Eli Lilly and Co. v. Home Insurance Co., 482 N.E.2d 467, 470 (Ind. 1985).  Ambiguity does not exist simply because the parties favor a different meaning of interpretation.  Anderson, 471 N.E.2d at 1172; Beam v. Wausau Insurance Co., 765 N.E.2d 524, 528 (Ind. 2002).  The court will not rewrite clear and unambiguous language regardless of the equitable reasons for doing so.  Ely v. State Farm Mutual Auto. Insurance Co., 268 N.E.2d 316, 320 (Ind. App. 1971).

The parties first dispute whether the insurance policy provides for joint and several liability among the defendants. To resolve this dispute, the court first must interpret the policy and determine whether the policy contains clear terms allocating liability between the insureds, or whether the terms were ambiguous.  See Travelers, 715 N.E.2d at 937 (stating that the court must first determine whether the language in the contract is ambiguous).  The policy provides, in relevant part:

REPAYMENT OF EXPENSES

We will pay all expenses to settle a claim or
suit.  You'll be responsible for the amount
of expenses within the deductible.  As soon
as we notify you of a payment, you agree to
reimburse us for any such expenses until the
total amount of reimbursed damages and ex-
penses exceeds the deductible amount shown in
the coverage summary. . . .

AUTO COVERAGE SUMMARY

This Coverage Summary shows the Limits of
Coverage that apply to your Commercial Auto
Protection . . .

Limit of Coverage: $1,000,000.00 each acci-
dent.

OTHER: $100,000.00 basket deductible per
occurrence.

The policy defines "You, your, and yours" to mean "the insured

named here, which is a CORPORATION SCHILLI TRANSPORTATION SER-

VICES, INC. . . . SCHILLI LEASING, INC., ATLANTIC INLAND CARRI-

ERS, INC., WABASH VALLEY TRANSPORTATION, INC. . . . WVT OF TEXAS,

INC. . . ."

Inserting this definition into the provision pertaining to

repayment of expenses, the policy would read that a corporation

Schilli, Atlantic, Wabash Valley Transportation, and the other

named insureds, will be responsible for the amount of expenses

within the deductible.  The defendants assert that definition of

"you" states "a corporation", meaning one corporation, in the

singular, is liable for each resulting incident.  This may be

20

true if the policy did not go on to specifically name all of the businesses insured under the policy, thereby defining "you" as all of the companies. The designation "a corporation" signified the type of insureds that the policy covered, a corporation rather than a partnership or individuals, and did not limit the liability for the corporations under the policy. The policy clearly and unambiguously defines "you" as all of the corporations by specifically listing each corporation, and therefore, provisions containing the term "you" pertain to all of the listed corporations. For this reason, all of the listed corporations are liable under the repayment of expenses provision, and for the deductible at issue.

The defendants also argue that an ambiguity exists because Policy CK00210627 laid out specific rules that applied to the first named insured, and absent from the rules was a provision holding the first named insured liable for the deductible of the others. However, the policy specifically provided that the first name insured was liable for the premium and would receive repayment of expenses. The defendants argue that this language distinguishes that the corporation obligated to pay the deductible and repay expenses may be different than the first named insured. What the defendants fail to recognize is that the "general rules" section does not address the issue of liability for the deduct-

ible.  To the extent that this provision distinguishes between the first named insured and the remaining insureds, this does not defeat the plain language of the contract that specifically defines "you" to mean each corporation and makes "you" available for the resulting deductibles.  The general rules provision, distinguishing between the first named insured and the remaining insureds, does not conflict with this reading or create ambiguity.  Rather, when the definition of "you" is applied to the provision regarding the deductible, it renders each named corporation liable for the deductible, and nothing in the general rules section contradicts this reading.

The defendants alternatively argue that the Indiana Statute of Frauds prohibits holding each corporation liable for the others' debts absent a written agreement to do so.  The Indiana Statute of Frauds requires certain types of contracts to be made in writing.  Ind. Code §32-21-1-1.  Included under the statute of frauds are contracts made to pay the debts of another.  Ind. Code §32-21-1-1(b)(2).  A written memorandum satisfies the statute of frauds if it is signed by the party charged or his agent, and states with reasonable certainty the parties to the contract, the subject matter of the contract, and the terms and conditions of the promises.  McMahan Const. Co. v. Wegehoft Bros., Inc., 354 N.E.2d 278, 282 (Ind. App. 1976); Block v. Sherman, 34 N.E.2d

951, 955 (Ind. App. 1941). The failure to form a written con-
tract is disregarded if the contract is partially performed, how-
ever, the degree of performance required is determined on a case-
by-case basis. McMahan, 354 N.E.2d at 282.

An unconditional promise to pay the debt of another must be
both in writing and based on valuable consideration. Walker v.
Elkin, 758 N.E.2d 972, 975 (Ind. App. 2001); Southern Indiana
Loan & Savings Institute v. Roberts, 86 N.E. 490, 491 (Ind. App.
1908). However, if the consideration exchanged is sufficient "to
give to the promise the character of an original undertaking",
the contract is taken outside of the scope of the statute of
frauds. Walker, 758 N.E.2d at 975; Chandler v. Davidson, 1843 WL
2850, *1 (Ind. 1843). This is true when "new consideration
passes, at the time of the promise, between the newly contracting
parties, of such a character that it would support a promise to
the plaintiff for the payment of the same sum of money, without
reference to any debt from another." Chandler, 1843 WL 2850 at
*2. "Whenever the main purpose and object of the promisor is not
to answer for another, but to subserve some pecuniary or business
purpose of his own, his promise is not within the Statute".
Williston on Contracts §22.23. This exception is known as the
main purpose rule and serves to exempt promises made where the
defendant derives his own benefit from the promise so that it was

an original promise.  Davis v. Patrick, 141 U.S. 479, 488, 12 S.Ct. 58, 59-60, 35 L.Ed.2d 826 (1981)("Whenever the main purpose and object of the promisor is not to answer for another, but to subserve some pecuniary or business purpose of his own, involving either a benefit to himself or damage to the other contracting party, his promise is not within the statute. . . ."); Williston on Contracts §22.23.

The unambiguous terms of the contract render the defendants jointly and severally liable for the resulting debts under the contract.  Each defendant derived its own benefit from the contract in the form of insurance benefits, and St. Paul's issuance of the policy presumably was due in part to the joint and several liability of the named corporations under the contract.  By signing the contract, the defendants became parties to the original obligation.  They derived a benefit and in return were liable for the resulting debts as the terms of the contract provide.  This is not a case where one party is forced to pay the debts of another, rather, the parties are being held jointly liable for their debt according to the terms of the original policy they negotiated with St. Paul.  Therefore, the defendants were parties to the principal contract, rendering the statute of limitations inapplicable.

Furthermore, even if the statute of limitations applied, the defendants ignore that the policy they entered with St. Paul serves as a written agreement indicating their intent to be held jointly liable on the resulting debts under the terms of the contract. The contract unambiguously indicated that "you", meaning all of the named insured, were liable for the per accident deductible.

———————————

For the foregoing reasons, the Motion for Summary Judgment [DE 41] filed by the plaintiff, St. Paul Fire & Marine Insurance Company, on December 15, 2010 is GRANTED; the Motion for Summary Judgment [DE 44] filed by the defendants, Schilli Transportation Services, Inc. and WVT of Texas, Inc., on December 15, 2010, is DENIED; the Motion for Summary Judgment [DE 45] filed by the defendant, Schilli Transportation Service, Inc., on December 15, 2010, is GRANTED; the Motion to Strike Portions of the Affidavit of Michael P. Lynch [DE 47] filed by the defendants on January 18, 2011, is DENIED; and the Motion for Leave to File Amended Affidavit [DE 53] filed by the plaintiff on February 1, 2011, is GRANTED. St. Paul is entitled to judgment against the defendants, Schilli, Atlantic, and WVT, in the amount of $347,133.31, plus accrued interest at an annual rate of 8% from the date of invoice. St. Paul shall submit its interest calculation within

14 days so that a final judgment may be entered consistent with Federal Rule of Civil Procedure 54(a).

ENTERED this 5th day of May, 2011


                              s/ ANDREW P. RODOVICH
                                 United States Magistrate Judge