UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

ST. PAUL FIRE & MARINE       )
INSURANCE COMPANY,           )
                             )
            Plaintiff        )
                             )
        v.                   )   Case No. 2:08 cv 176
                             )
SCHILLI TRANSPORTATION       )
SERVICES, INC.; ATLANTIC INLAND)
CARRIERS, INC.; WVT OF TEXAS, )
INC.,                        )
                             )
            Defendants       )

OPINION AND ORDER

On September 6, 2012, the court held a bench trial to
resolve whether the parties intended to create joint liability
among the corporations named in an insurance policy the plain-
tiff, St. Paul Fire & Marine Insurance Company, issued to the
defendants.  Upon conclusion of the trial, the parties were
directed to file a post-trial brief.  The parties have submitted
their briefs, and the case is ripe for decision.  For the reasons
set forth below, the court enters judgment in favor of the
defendants.

Background

St. Paul Fire & Marine Insurance Company issued an insurance
policy for the term of June 1, 2000 through June 1, 2002, that
listed the defendants, Schilli Transportation Services, Inc.

(STS), Atlantic Inland Carriers, Inc. (AIC), and WVT of Texas, Inc., as the named insureds. STS, AIC, and WVT are separate corporations, each predominately owned by Tom Schilli, that engage in distinct businesses. WVT is an interstate motor carrier, and AIC previously was an interstate motor carrier but closed in 2003. STS served three functions: (1) the marketing arm and freight broker for Schilli-owned companies and other outside companies; (2) the common bill-payor for the Schilli-owned companies; and (3) the administrative service provider for the Schilli-owned companies. STS never has owned a tractor trailer and never has employed truck drivers. STS also provided risk management services for claims asserted against the trucking companies, but all claims resolved on behalf of the trucking companies were paid for by the trucking companies themselves.

The policy St. Paul issued to the Schilli-owned companies defined "you, your, and yours" to mean "the insured named here which is a CORPORATION", and goes on to list each corporation. The policy provides in relevant part:

> EACH ACCIDENT/EVENT DEDUCTIBLE
>
> You agree to repay us up to this deductible amount for all damages caused by any one accident, as soon as we notify you of the judgment or settlement . . .
>
> REPAYMENT OF EXPENSES
>
> We will pay all expenses to settle a claim or

suit.  You'll be responsible for the amount
of expenses within the deductible . . .

AUTO COVERAGE SUMMARY

This Coverage Summary shows the Limits of
Coverage that apply to your Commercial Auto
Protection . . .

$1,000,000.00 each accident.

OTHER:

$100,000 basket deductible per occurrence.

Under the General Rules section, the policy explained that
the first named insured, STS, was responsible for paying the
premium and would receive return premiums.  The first named
insured also could change or cancel the policy in whole or in
part.  However, this section did not address who would be respon-
sible for the deductible in the event of a claim.  In a separate
provision, the policy stated that St. Paul would apply the
agreement "to each protected person named in the Introduction as
if that protected person was the only named on there; and sepa-
rately to each other protected person".

During the term of the insurance policy, several accidents
occurred involving Schilli-owned companies.  On January 18, 2001,
an automobile accident occurred between a car driven by Heather
Thompson and a semi-tractor trailer driven by an AIC employee in
Ontario, Canada.  Thompson filed a complaint against STS, Schilli
Leasing, Schilli Specialized, AIC, Whiteford Service, and White-

ford Services, Inc., and St. Paul negotiated the release of Thompson's claim in the amount of $102,567.20. St. Paul sent STS an invoice for the $100,000 deductible, and STS refused to pay.

On October 25, 2001, a collision occurred between an automobile driven by Andrea Johnson and a semi-tractor trailer driven by an AIC employee. St. Paul communicated with STS regarding the status of the claim and eventually negotiated a $16,000 settlement of Johnson's claim. Johnson executed a release of all claims which named STS as one of the entities released. At trial, St. Paul did not provide a copy of Johnson's complaint, and no evidence was presented on whether a suit was filed and, if it was, which insureds were named as defendants.

On June 22, 2000, an accident occurred between a WVT employee attempting to load a semi-tractor trailer and an Owens Corning employee operating a forklift. The WVT employee, Albert Kozusko, filed a declaratory judgment action seeking a determination that St. Paul owed uninsured motorist coverage benefits under the policy issued to STS. St. Paul incurred defense costs of $13,161.70 to defend the claim. St. Paul did not submit the complaint or release documents for this claim. No evidence was presented on which insureds Kozusko intended to proceed against.

On January 6, 2002, Allison Bergner was involved in a three vehicle collision involving a semi-tractor trailer driven by

Donald H. Indorf, an employee of AIC. It is not clear whether a complaint ever was filed because St. Paul did not submit a copy of the complaint or release documents. The only document submitted as proof of this claim was an internal document reflecting that St. Paul incurred expenses in the amount of $24,971.61 resolving this claim. Again, no evidence was provided on which insureds Berger intended to proceed against.

Another accident occurred on May 8, 2001, involving Lean Wurslin and a semi-tractor trailer driven by an employee of AIC. Wurslin filed suit against STS, and St. Paul negotiated a $135,000 settlement.

On February 25, 2002, Maria Fuentes and Otilio Aguilar were involved in a collision with a semi-tractor trailer driven by an employee of WVT. Fuentes and Aguilar filed a suit against STS, and St. Paul negotiated a settlement for $62,500 to both Fuentes and Aguilar, releasing STS, Schilli Leasing, and WVT from liability.

St. Paul sent STS an invoice seeking reimbursement for the $100,000 deductible for each accident. STS refused to pay on each account, arguing that it was not liable for the deductible because it did not cause the accidents and the policy did not call for joint liability. STS asserts that WVT and AIC should be held responsible for the claims.

Each party filed a motion for summary judgment.  This court granted summary judgment in favor of St. Paul, explaining that the language of the contract established joint and several liability among the defendants.  Specifically, the court explained that although the contract defined "you, your, and yours" to mean "a corporation", because it went on to list each company, it was clear from the face of the contract that "you, your, and yours" referred to every named corporation and that "a corporation" only identified the type of business entity the insurance policy was issued to.  When this definition was inserted into the provision pertaining to the repayment of expenses, the court inserted the names of all the corporations, consistent with the definition, and found that the defendants were jointly liable.

The defendants appealed this court's decision, and the Seventh Circuit remanded the case, explaining that the manner in which the corporations' names were listed on the policy created ambiguity and that a reasonable person could find either that the parties intended joint or individual liability.  *St. Paul Fire & Marine Ins. Co. v. Schilli Transportation Services*, 672 F.3d 451, 459 (7th Cir. 2012).  The Seventh Circuit went on to consider an argument not raised with this court because it was necessary to consider the contract as a whole.  The policy contained a "Separation of Protected Persons" clause, which stated that St. Paul

would apply the agreement "to each protected person named in the Introduction as if that protected person was the only named one there; and separately to each other protected person".  The Seventh Circuit found that this created further ambiguity when read with the definition of "you, your, and yours."  The Seventh Circuit remanded the case directing this court to determine the intent of the parties when the contract was formed.

The court held a bench trial on September 6, 2012.  At the trial, Michael Lynch, a case manager for the St. Paul collections department, was first to testify.  Lynch was responsible for collecting the deductibles and had not been involved in the formation of the contract.  Lynch stated that St. Paul certainly intended that all named insureds were liable for the amounts advanced by St. Paul without regard to which of the named in-sureds might be liable for any given claim.  St. Paul introduced Exhibits A through W while Lynch was on the stand.  The exhibits showed that St. Paul sent the invoices to STS for the amounts advanced to settle the claims, and not to the additional named insureds, although the invoices named all of the companies.  STS was the only entity that ever reimbursed St. Paul and was named as one of the parties released from liability when St. Paul settled the claims.  On cross-examination, Lynch admitted that he did not handle claims and had no personal knowledge of the six

claims pending against the Schilli-owned companies, why St. Paul only corresponded with STS, why the checks paid to St. Paul for the premiums were written by STS, or why the six underlying claims were settled.

The defendants called three witnesses, including Tom Schilli, the owner of the companies listed as insureds on the policy, Douglas Fahrnow, the accountant for the Schilli-owned companies, and Wanda Miller, the Human Resources Director for STS. Farhrnow explained that STS served as a common bill-payor for the Schilli-owned companies. STS provided administrative services for the other companies and paid their bills with each respective companies' monies. The annual audits were consistent with this structure, and each company had a separate federal tax ID number, was separately incorporated, and filed a separate tax return.

Miller was next to testify about the structure of the Schilli-owned companies. As the Human Resource Director, she was responsible for administering the benefit plans for all Schilli-owned companies. She maintained the benefit files, employee handbooks, and personnel files for all of the corporations. Miller explained that employees could be classified as a driver or operational employee, which encompassed employees who were employed in non-driver capacities such as those in the adminis-

trative and human resource department.  STS handled all of the
human resource activities for all of the Schilli-owned companies
and did not employ any drivers.

Tom Schilli also testified about the structure of his
companies.  Schilli explained that there is no holding company
which owns all of the companies.  He owns all of the companies
independently except STS, which his children have an ownership
interest in.  STS did all of the administrative work for the
companies, including human resource functions, insurance procure-
ment, and claims investigation and handling, but STS did not own
any trucks, employ any truck drivers, or haul any freight.
Schilli explained that each company used a separate bank, and
that when STS wrote a check to pay a bill, it was doing so with
the monies of the company for whom the bill was paid.  STS never
had assumed liabilities or taken on the debts of any of the other
companies.

Schilli described two meetings with St. Paul representatives
that occurred in 2000.  At the first meeting, St. Paul safety
experts went to the offices of the Schilli-owned companies to
look through driver files, driver histories, accident files, and
claim files to determining the pricing for the insurance.  At
this time, Schilli testified that St. Paul representatives
learned of the structure of the companies and that STS provided

claim investigation and handling services for all Schilli-owned companies. Six months after the policy was issued, Schilli went to Minneapolis, Minnesota to meet with St. Paul representatives to go over the whole program. The parties discussed the structure of the companies at this meeting and the procedure for handling the claims. Schilli testified that he made it clear at this meeting that each corporation was a separate and distinct legal entity and that it was not the intent of his companies to be jointly liable for the deductibles of the other companies.

On cross-examination, St. Paul questioned Tom Schilli about AIC. Four of the six claims arose from AIC, but because the company was dissolved, it has no assets. Schilli testified that the closing of this company was due in part to a lawsuit in California that had a high potential liability. St. Paul and STS disputed coverage of the California claim.

At the conclusion of the bench trial, the parties requested permission to file post-trial briefs. The parties submitted their briefs on October 1, 2012, and the case is now ripe for decision.

## Discussion

On appeal, the Seventh Circuit remanded this case and instructed that there was ambiguity in the terms of the contract and that it could not be determined solely from the contract

whether the parties intended for the named Schilli-owned compa-
nies to be jointly liable for the six insurance claims that are
the subject of this dispute.  On remand, this court was in-
structed to consider the intent of the parties when entering the
insurance agreement to resolve whether the contract called for
joint liability among the named Schilli-owned companies.  To
accomplish this, the court was directed to consider "evidence
concerning 'the history of the formation of the policy' and the
course of dealing under it".  *Schilli*, 672 F.3d at 462.  Specifi-
cally, the court should consider evidence of the communications
and activities of the parties at the time the contract was form-
ed, evidence of how the parties dealt with liability for deduct-
ibles in the past, and "the effect, if any, of the 'Right and
Duty to Defend' provision in combination with the fact that, with
respect to all six claims, Schilli Transportation: (a) was named
in a claim or as a defendant in a suit; (b) received a defense
from St. Paul; and/or (c) was released from all claims by the
injured party/plaintiff as part of a settlement." *Schilli*, 672
F.3d at 462.

    In resolving a contract dispute, the court first must deter-
mine whether the policy contains clear terms or whether ambigu-
ities exist.  *See* ***Travelers Indemnity Co. v. Summit Corp. of
America***, 715 N.E.2d 926, 937 (Ind. App. 1999)(stating that the

court must first determine whether the language in the contract is ambiguous). A term is ambiguous if it is susceptible to more than one interpretation and a reasonable person may differ as to the meaning of the policy language. *Eli Lilly and Co. v. Home Insurance Co.*, 482 N.E.2d 467, 470 (Ind. 1985). The terms are to be construed against the insurer and in favor of the insured. *Nautilus Insurance Co. v. Vuk Builders, Inc.*, 406 F.Supp.2d 899, 903 (N.D. Ill. 2005). Once it is determined that the terms of the contract are ambiguous, the court may look outside the contract and determine the intent of the parties by analyzing the course of dealings and the history of the contract's formation. *Schilli*, 672 F.3d at 459, 462. The burden is on the plaintiff to prove the parties' mutual intent. *Colburn v. Trustees of Indiana University*, 739 F.Supp. 1268, 1291 (S.D. Ind. 1990) (explaining that the plaintiff must prove the terms of the contract).

In analyzing the intent of the parties, the court must determine the parties' mutual understanding of the contract. *Over the Road Drivers, Inc. v. Transport Ins. Co.*, 637 F.2d 816, 819 (1st Cir. 1980). If the plaintiff only presents evidence of its intent, this is insufficient to establish that both parties agreed on the same meaning. *Over the Road Drivers*, 637 F.2d at 819. The court will look to both the events that gave rise to the formation of the contract and the parties' past course of

dealings. *Schilli*, 672 F.3d at 459. Great attention must be given to who was billed and paid the premiums, particularly whether the money was advanced or taken straight from a co-insurer's account. *Over the Road Drivers*, 637 F.2d at 822; *American Mutual Liability Insurance Co. v. Bollinger Corp.*, 402 F.Supp. 1179, 1185 (W.D. Penn. 1975) (finding that the parties intended joint liability in part because the insured advanced funds for the associated companies). The court also will con-sider whether the companies named in an insurance policy have a common ownership, that owner's role in procuring the insurance agreement, the manner in which the companies kept their books, and the corporate organization. *Over the Road Drivers*, 637 F.2d at 820, 822; *Bollinger*, 402 F.Supp. at 1185.

In *Over the Road Drivers*, the parties disputed whether the seven companies named in an insurance policy were jointly and severally liable. In considering the course of dealings, the court explained that the evidence presented on the history of the policy formation only established the insurer's intent and be-cause it did not show that the insureds shared this interpreta-tion, it was not dispositive of the issue. *Over the Road Driv-ers*, 637 F.2d at 818-19. The court turned to the course of dealings, first addressing other cases that found liability could be "imposed on one corporation for insurance premiums attribut-

able to coverage of its subsidiaries or affiliates, when the corporation has procured the insurance coverage and had consistently been billed for and paid all premiums." ***Over the Road Drivers***, 637 F.2d at 820. The court distinguished the case because although the companies had a common owner who procured the insurance policy, the named insureds were billed separately and the insureds maintained a strict separation of their financial records in their bookkeeping. ***Over the Road***, 637 F.2d at 821-22.

In a similar case, the Western District of Pennsylvania found that one insured, Bollinger Corp., was liable for the premiums of the related corporations named in the insurance policy. Although Bollinger later was reimbursed by the related corporations, the court found that this pay arrangement coupled with the insurance savings and advantages Bollinger received from holding the joint policy was enough to establish the parties' intent for Bollinger to be liable for the other named insureds' premiums. ***Bollinger***, 402 F.Supp. at 1183, 1185.

There is a presumption that the insurance policy must be interpreted against St. Paul. *See **Nautilus***, 406 F.Supp.2d at 903. The policy does not state clearly that joint liability was created and instead includes a "separation of protected persons" clause, which provides that St. Paul would apply the agreement to

each protected person as if that person was the only named one there.  (Comp. Ex. 1)  "[I]t would be unfair for an insurance company, in complete control of its printed forms, to impose joint liability on insureds by way of a printed policy containing no mention of such an arrangement, absent extrinsic evidence clearly indicating that joint liability was intended by the parties on both sides of the agreement."  ***Over the Road Drivers***, 637 F.2d at 821.  The court must look for this clear extrinsic evidence and determine whether the parties had a mutual intent to create joint liability by analyzing the history of the policy's formation and the course of dealings.  ***Over the Road Drivers***, 637 F.2d at 821-22.

Looking first at the history of how the policy was formed, the only competent evidence presented at trial weighs against finding joint liability.  The only witness St. Paul called was Lynch, who was not present at the time the Schilli-owned companies and St. Paul entered the insurance agreement.  Lynch's familiarity with the claim was limited to his attempts to collect the deductible.  Lynch did not testify about, and did not have personal knowledge of, the discussions St. Paul and Schilli had when the contract was entered.  Schilli was the only witness to testify to the events giving rise to the policy.  Schilli stated that the parties had a meeting before the policy was issued.  At

this meeting, he informed St. Paul of the organizational struc-
ture of the Schilli-owned companies.  Specifically, Schilli told
St. Paul that STS served as a common-payor for the other corpora-
tions and performed administrative functions on their behalf.
STS did not own any trucks or hire any truck drivers and each
company was run independently and maintained separate bookkeep-
ing.  Schilli stated that it was not his intent at the time the
policy was formed for the companies to be jointly liable and that
he made this known to St. Paul.

St. Paul carries the burden to show that it was the parties'
mutual understanding that the policy imposed joint liability
among the Schilli-owned corporations.  *Colburn*, 739 F.Supp.at
1291.  St. Paul did not present any evidence to contradict
Schilli's statement that he did not intend to create joint
liability, nor did it provide any evidence to support an alterna-
tive interpretation of the events leading up to the policy's
formation.  St. Paul cannot rely solely on the hope that the
court will disbelieve the defendant's testimony as a means of
proving its case.  *EEOC v. GKG, Inc.*, 39 F.3d 740, 746 (7th Cir.
1994) (explaining that the plaintiff cannot succeed if his only
evidence is that the defendant's witnesses were not credible).
Rather than present testimony suggesting that the Schilli-owned

corporations shared its intent to create joint liability, St.
Paul relied solely on the parties' course of dealings.

St. Paul argues that the course of the parties' dealings
during the term of the policy supports joint liability because
the bills for the insurance premiums always were sent to STS, the
policy stated that STS, as the first named insured, was solely
responsible for the premiums, STS was the only entity ever to
reimburse St. Paul, and STS would receive any refunds under the
policy terms.  However, although STS paid the premiums on behalf
of each of the insureds, the payments were taken from each
company's independently maintained bank account.  The companies
did not co-mingle funds, and STS did not advance payments.
Fahrnow, the accountant for the Schilli-owned companies, con-
firmed that the audit and balance sheets for each company re-
flected that each company paid its own expenses.  Miller, the
human resource manager, agreed that the companies were structured
so that STS would perform administrative functions and serve as a
common-payor for the other Schilli-owned corporations.  Each
company had its own tax identification number, filed a separate
tax return, and maintained its own bank account.  There was a
strict separation between the financial accounts of each company,
and despite STS issuing one check, the premiums consistently were
paid from the accounts of each named insured.

St. Paul was informed that STS was a common-payor and that the companies maintained their own accounts prior to entering the insurance policy. It should come as no surprise that the Schilli-owned corporations did not intend to create joint liability by continuing to operate in the same manner they always had. Much of what St. Paul relies on is the wording of the contract, which the Seventh Circuit previously declared ambiguous. To succeed, it was necessary for St. Paul to point to some extrinsic evidence. The documents St. Paul submitted, which show that STS issued the payments, is insufficient. The most important factors of intent to create joint liability are whether the companies maintained separate bookkeeping and responsibility for their premiums. In fact, the court in *Over the Road Drivers* distinguished the case on the grounds that the insureds were billed separately, each company paid its own premium, and the companies maintained separate bookkeeping. *Over the Road Drivers*, 637 F.2d at 821-822. Here, the uncontradicted evidence shows that the Schill-owned companies maintained financial separation and individual responsibility for paying the premiums and that St. Paul was aware of this prior to entering the contract. St. Paul has not presented any evidence to show that the course of dealings clearly indicate that both parties intended joint liability. The unfairness that may result from imposing joint liability on

the insured when the policy is silent coupled with both the presumption that the policy must be interpreted in favor of the insureds and the lack of evidence St. Paul presented at trial to demonstrate that the course of dealings showed an intent to create joint liability, fortifies the conclusion that the parties did not intend joint liability.

Although the contract does not call for joint liability, several of the underlying tort claims named multiple Schilli-owned corporations including STS. Thompson filed a complaint alleging that the truck driver responsible for her accident was employed by one of the following companies: STS, Schilli Leasing, Schilli Specialized, AIC., Whiteford Service, and Whiteford Services, Inc. She further alleged that STS or Schilli Leasing was the lessee of the motor vehicle. Similarly, the claims filed by Wurslin, Fuentes, and Aguilar alleged that the drivers who caused their respective accidents were employed by STS. However, the record unequivocally shows that STS did not employ any truck drivers and did not own or operate any trucks, and therefore the truck drivers could not have been employed by STS. Rather, the uncontradicted evidence is that the truck drivers involved in Thompson and Wurslin's accidents were employed by AIC, and the driver responsible for Fuentes and Aguilar's accident was em-ployed by WVT of Texas.

The insurance policy imparts on the insurer a duty to defend unless "the underlying factual basis of the complaint, even if proved true, would not result in liability under insurance policy." *National Fire and Casualty Co. v. West*, 107 F.3d 531, 535 (7th Cir. 1997). The right to control the defense and the right to make the settlement decision carries with it the contractual obligation to provide an adequate defense and to act in good faith in making the decision to settle or go to judgment. *Economy Fire & Casualty Co. v. Collins*, 643 N.E.2d 382, 386 (Ind. App. 1994) ("Indiana courts impose a duty on insurance companies to deal in good faith with their insureds."). When exercising this duty, the insurance company is responsible for protecting its insured against liability. *Bennett v. Slater*, 289 N.E.2d 144, 148 (Ind. App. 1972).

The insurance policy stated that St. Paul would treat each company separately when resolving claims, imparting a duty on St. Paul to protect each company from liability and to resolve any claims in the manner that would be most beneficial to that company. The evidence unequivocally shows that STS did not employ any truck drivers or own or operate any trucks and, therefore, could not have been liable for the accidents. An employee of AIC was responsible for Thompson and Wurslin's claims, and an employee of WVT of Texas caused Fuentes and Aguilar's accident.

It would be fundamentally unfair, and against the separation of protected persons clause, to seek full reimbursement from one insured who shared no responsibility for the underlying claim. To hold otherwise essentially would impose joint liability.

St. Paul retained the burden to show that it was entitled to relief. The only witness St. Paul called was Lynch, who testified that he had no personal knowledge of why the claims were settled. St. Paul has put no evidence forward to show that STS engaged in any behavior that would have made it culpable for any of the underlying claims. Because the record is clear that STS could not have been liable for the underlying claims, it was St. Paul's duty to protect STS from such meritless claims. St. Paul cannot now seek reimbursement from a company who played no role in causing the underlying claims.

St. Paul argues that STS and the other non-liable Schilli-owned corporations who were named in the complaints of the underlying personal injury cases are liable because St. Paul provided a defense and procured a settlement, releasing these parties from liability. It is true that St. Paul had a duty to defend because "[t]he duty to defend depends on what the claimant alleges, not the ultimate merit or lack of merit of the claim." *Home Federal Savings Bank v. Ticor Title Ins. Co.*, 695 F.3d 725, 731 (7th Cir. 2012). The insurer owes a duty to defend unless

"the underlying factual basis of the complaint, even if proved true, would not result in liability under insurance policy." *West*, 107 F.3d at 535. For example, when an insurance contract excludes coverage for intentional or criminal acts, if the basis of the underlying suit arises from an intentional or criminal act, the insurer is relieved of its duty to defend. *See State Farm Fire & Cas. Co. v. C.W.*, 2010 WL 597930, *2 (N.D. Ind. Feb. 17, 2010). Alternatively, when a suit arises from the type of claim that is covered by the insurance policy, although it may completely lack merit, the insurer must defend the insured. *See Terre Haute First Nat'l Bank v. Pacific Employers Ins. Co.*, 634 N.E.2d 1336, 1339 (Ind. App. 1993).

Here, each complaint arose from damages incurred as a result of an automobile accident allegedly caused by an employee of the named defendant companies. Because the insurance policy provided coverage for automobile accidents caused by the companies' employees, these are the types of claims that fell within the policy and imposed a duty to defend on St. Paul. "As a general rule, a party who accepts the benefits of a contract cannot escape its burdens." *Hartford Accident and Indem. Co. v. L & T, Inc.*, 455 So.2d 1074, 1076 (Fla. App. 1984); *Phoenix Ins. Co. v. Tomlinson*, 25 N.E. 126, 127 (Ind. 1890). The non-liable Schilli-owned corporations benefitted because St. Paul provided a defense

and procured a release of the claims pending against both the potentially liable and non-liable entities. The non-liable corporations may have been responsible for some of the defense costs because they did received a defense and were released from the claims, although they should not be responsible for the settlement itself. As the court explained above, it would be unfair, against the separation of protected persons clause, and essentially would impose joint liability to require the non-liable insureds to pay the settlement of claims they clearly were not responsible for. However, these companies should be responsible for the benefit they received from having a defense provided that ultimately relieved them from liability of the meritless claims, but St. Paul provided no accounting of the costs it incurred defending the corporations that clearly lacked culpability. St. Paul only sought reimbursement of the entire amount due on each claim. The court will not speculate as to the expenses St. Paul incurred when defending the non-liable Schilli-owned corporations.

The evidence St. Paul submitted to establish liability for the Johnson, Kuzusko, and Bergner claims was even more attenuated. St. Paul did not provide a complaint for any of these claims, a release document for the Kozusko or Bergner claims, or a copy of the settlement check for the Bergner claim. In each of

these instances, it is unclear that the claimants intended to proceed against any of the entities except the one who employed the truck driver responsible for the accident.  Again, the record unequivocally shows that AIC employed the driver involved in the Johnson and Bergner claims and that WVT of Texas employed the truck driver involved in the Kozusko claim.  Because St. Paul has not proven that the claims even were brought against any entities other than those who employed the truck driver responsible for each respective accident, and the record does not support that any other Schilli-owned corporation could have been responsible for any part of the claims, St. Paul has not met its burden to show that any of the other Schilli-owned corporations, including STS, were liable for any part of their deductible on these claims.

_____

Based on the foregoing, the court finds that St. Paul has not satisfied its burden of proof and **ENTERS JUDGMENT** in favor of the defendants.

ENTERED this 9th day of November, 2012

s/ ANDREW P. RODOVICH
United States Magistrate Judge